FILED

AUG 1 1 2003

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: WILLIAM G. BARNES, | ) | CIV. 02-5070-KES |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GAIL SOHLER, | ) | |
| d/b/a Stockman's Livestock Co., Ltd., | ) | ORDER AFFIRMING THE |
| | ) | BANKRUPTCY COURT'S |
| Appellant, | ) | DECISION |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM G. BARNES, | ) | |
| | ) | |
| Appellee. | ) | |

Appellant, Gail Sohler, an unsecured creditor of appellee, William G. Barnes, appeals the bankruptcy court's decision finding that Sohler's pre-petition claim is not exempt from discharge under 11 U.S.C. § 523(a)(4) as a debt originating from embezzlement.  The court affirms the bankruptcy court's decision.

## FACTS AND PROCEDURAL BACKGROUND

As will be detailed further, the facts are not subject to review in this appeal.  Sohler only seeks this court's review on a matter of law: whether the bankruptcy court considered an improper element for establishing embezzlement in ruling that Sohler's claim was dischargeable in bankruptcy.

The facts as found by the bankruptcy court are as follows:  Sohler employed Barnes starting in 1988.  From 1994 until 2001, Barnes managed a sale barn for Sohler in North Dakota.  Sohler considered Barnes a trusted employee and allowed Barnes the opportunity to participate in a "dealer account" program for his higher-level employees.  Under this

program, employees could use funds advanced from Sohler's bank line of credit to purchase cattle on a revolving basis. After the livestock were resold, the employee kept any profits and suffered any losses on the transaction. Sohler's bookkeeper, Robert Burbach, kept track of the funds advanced, expenses, interest, and the sale proceeds that were deposited with him. No signed agreements were used.

Barnes participated in the dealer account program. Barnes and Sohler had no written agreements regarding the arrangement. Barnes made his last cattle purchases under this arrangement in mid-1998. Barnes paid back some of the funds advanced, but Burbach advised Barnes "there are more cows that we paid for." At the end of 1998, Burbach reported to Barnes that he had purchased 94 cows and 200 calves through his dealer account. Barnes made various payments on his account until 2001. During the same time, Barnes also entered into loans and agreements with a local bank for use of his own funds to purchase and sell cattle. Barnes did not segregate any cattle or funds derived from any of his cattle transactions. All the cattle were branded with Barnes's brand.

In 2000, Sohler notified Barnes that the North Dakota sale barn would be closing in 2001 and that Barnes needed to make arrangements to repay advanced funds. Barnes made his last payment on advanced funds in April 2001 and the North Dakota sale barn closed in June 2001. At that time, the balance owed to Sohler was over $80,000, despite an oral agreement not to exceed $50,000 in advanced funds. Although Barnes initially indicated a desire to repay the advanced funds, he was unable to meet all of his obligations and filed Chapter 7 bankruptcy on July 5, 2001. Sohler was listed in the bankruptcy petition as a general unsecured creditor for $80,310.46 (although this amount was disputed).

Sohler sought a determination from the bankruptcy court alleging his claim fell under one of several exceptions under 11 U.S.C. §§ 523(a)(2) or (a)(4). The court dismissed all Sohler's claims except embezzlement under § 523(a)(4). The court found that the arrangement and subsequent transactions between Sohler and Barnes did not amount to embezzlement, but were merely a breach of contract dischargeable in bankruptcy. The court also found that Barnes lacked a malevolent intent necessary for a finding of embezzlement. The bankruptcy court entered its order on July 30, 2002.

Sohler timely filed this appeal on August 12, 2002. Sohler did not obtain a transcript of the bankruptcy court proceedings pursuant to Bankruptcy Rule 8006. Barnes moved to dismiss the appeal for failure to order a transcript. Failure to provide a transcript can result in dismissal of an appeal within the court's discretion. RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1289 (5th Cir. 1995). This court allowed the appeal to proceed, but held that it will only review for errors of law and will "assume all facts and inferences drawn from those facts as found by the bankruptcy court are not clearly erroneous." Order Denying Motion to Dismiss Appeal (May 29, 2003). See also Decision Re: Dischargeability of Claim Held by Plaintiff (July 30, 2002) (for reference to facts found by bankruptcy court). Briefs on an issue of law, whether the bankruptcy court incorporated an improper embezzlement element, were received.

## STANDARD OF REVIEW

The bankruptcy court's legal determination that embezzlement requires an element of malevolent intent is subject to de novo review. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987).

## DISCUSSION

Exceptions to discharge of bankruptcy debts are construed narrowly. In re Black, 787 F.2d 503, 505 (10th Cir. 1986). In addition, the burden of proof for seeking an exception is on the creditor. Id. The appellant must prove a dischargeability exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991). These principles support the notion of bankruptcy as a "fresh start" for the debtor. In re Moen, 238 B.R. 785, 790-91 (B.A.P. 8th Cir. 1999) (quoting In re Van Horne, 823 F.2d 1285, 1287-88 (8th Cir. 1987)). Certain exceptions to the dischargeability of debts in a bankruptcy proceeding are allowed, however, under 11 U.S.C. § 523, including an exception for debts owed as a result of embezzlement. The pertinent section allows an exception for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

While the statute does not outline specific elements, the Eighth Circuit has defined what constitutes embezzlement under the statute. Werner v. Hoffman, 5 F.3d 1170, 1172 (8th Cir. 1993) (noting that embezzlement "requires that the debtor improperly used the creditor's property before complying with some obligation to the creditor); In re Phillips, 882 F.2d 302, 305 (8th Cir. 1989) (noting that embezzlement "is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come."). Although not always specified as a "malevolent intent," courts have included some form of intent in the definition for embezzlement. In re Knodle, 187 B.R. 660, 664 (Bankr. D.N.D. 1995) (stating that "malevolent intent" is implicit in embezzlement); In re Bevilacqua, 53 B.R. 331, 334 (Bankr. S.D.N.Y.1985) (requiring fraudulent intent or deceit);

4

In re Walker, 7 B.R. 563, 565 (Bankr. D. Ga. 1980) (requiring fraudulent intent).  See also

Collier on Bankruptcy, Volume 4, P 523.10[2] (15th ed.) (noting that embezzlement requires

fraudulent intent or deceit).

Courts have also defined certain situations which do not rise to embezzlement, such as

where a creditor is unable to establish an improper use of funds despite overarching

obligations to a creditor.  In re Belfry, 862 F.2d 661, 663 (8th Cir. 1988).  If a debtor uses

creditor-advanced funds or proceeds of those funds for any purpose other than creditor

repayment, such use is not improper unless the agreement between creditor and debtor makes

clear that the repayment obligation has priority.  Id.

Sohler attempts to argue that intent is not an element of embezzlement and therefore

cannot be used to determine whether Barnes embezzled funds from Sohler.  The statute

outlines no required elements for embezzlement, but courts have construed embezzlement to

include some improper use, improper purpose, or bad intent.  The bankruptcy court found no

such improper purpose because the loose agreement did not require immediate repayment

upon sale of cattle, only that Barnes was eventually responsible for all profits and losses.

Under this agreement, the bankruptcy court found there was no requirement for Barnes to

keep a separate accounting for cattle purchased with funds advanced from Sohler nor any

separate accounting for proceeds from the sale of those cattle.  In addition, the court found the

evidence supported a finding that Sohler acquiesced to use of funds for other purposes despite

knowledge of comingling of cattle and occasional use of funds for livestock maintenance

expenses.  The bankruptcy court appropriately found that intent was a proper element of

embezzlement and that Barnes lacked such requisite intent.

Even if intent were an element, the burden is on Sohler to prove the cattle arrangement was embezzlement and not merely a breach of contract. Breach of contract debt is not excepted from bankruptcy discharge. Werner, 5 F.3d at 1172. Although Sohler may wish to now characterize the nature of the relationship between Sohler and Barnes differently than the bankruptcy court, Sohler is bound by that court's findings of fact regarding the relationship due to the limited nature of this appeal. That court found that the evidence showed no agreement or practice of immediately turning over all proceeds of cattle sales to pay down the advanced funds debt. Lacking such an obligation, the court found a breach of contract rather than embezzlement. Because the burden of proof is on Sohler and bankruptcy exceptions are to be narrowly construed, the facts as found by the bankruptcy court support a conclusion that a breach of contract occurred, and thus, no embezzlement.

## CONCLUSION

Accordingly, it is hereby

ORDERED that the bankruptcy court's decision denying Sohler's claim for an exception to discharge of Barnes's bankruptcy debt is affirmed.

Dated August 11, 2003.

BY THE COURT:

*Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE